**In re JK CHEMICALS, INCORPORATED**
Debtor.

**Edward E.V. D'AGOSTINO, Trustee, Plaintiff,**

v.

**Jerome KAPLAN, Harry Fradin, Gladys Kaplan, Defendants.**

Bankruptcy No. 8000418.
Adv. No. 820314.

United States Bankruptcy Court, D. Rhode Island.

Nov. 7, 1986.

William M. Heffernan, Roberts, Carroll, Feldstein & Tucker, Providence, R.I., for plaintiff.

David A. Schechter, Providence, R.I., for Jerome Kaplan.

Harry Fradin, pro se.

DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on April 23, 1986 on the assessment of damages, on judgments previously entered against Harry Fradin on December 31, 1985, and against Jerome Kaplan on March 12, 1986.

The pertinent facts and travel of this proceeding are briefly summarized below. On July 7, 1982, the trustee commenced this adversary proceeding to set aside fraudulent and preferential transfers, and to recover damages for conversion, breach of fiduciary duty, corporate waste and mismanagement, and misappropriation of assets. In his amended complaint the trustee demands $1,000,000 in compensatory dam-

ages, and $1,000,000 in punitive damages, plus interest, costs and attorneys' fees. On December 31, 1985, Harry Fradin consented to the entry against him of a default judgment. *See* Trustee's Exhibit 2. On March 12, 1986, after much unwarranted ado,[1] the trustee's motion for summary judgment against Jerome Kaplan was granted, on the ground that Kaplan was collaterally estopped from disputing the allegations in the complaint, by virtue of his prior guilty plea to a substantially identical criminal charge before the District Court. *See Matter of Raiford,* 695 F.2d 521 (11th Cir.1983); *Fontneau v. United States,* 654 F.2d 8 (1st Cir.1981) (per curiam).

At the April 23 hearing on damages, held pursuant to Fed.R.Civ.P. 56(c),[2] William M. Heffernan, Esq., counsel for the trustee, advised the Court that his proof would apply to defendants Jerome Kaplan and Harry Fradin, and made no mention of defendant Gladys Kaplan, Jerome Kaplan's wife. Since the trustee offered nothing in support of his claim against Gladys Kaplan, he is deemed to have abandoned his cause of action against her, and as to Gladys Kaplan the complaint is dismissed.[3]

In his opening remarks, Mr. Heffernan also informed the Court that he would be introducing evidence as to, and attempting to prove, only those damages arising from an alleged "shortage of precious metals that ... should have been in the debtor[s'] estate at the time of the filing of the bankruptcy petition." TR. at 2. Counsel's stated reason for electing not to offer evidence of damages related to other misdeeds for which defendants Jerome Kaplan and Harry Fradin have already been adjudicated liable, was that

the amount of the assets of the defendants is not that substantial, and because of the amount of damages that we feel

we will be able to prove from the very limited scope of inquiry that we have conducted, it would not be ... economically efficient to expand the scope of inquiry....

TR. at 3.

Mr. Heffernan's decision to confine his proof of damages to precious metal shortages substantially reduces the amount of the potential award here, and, based upon the record, we are puzzled by his rationale. The abandonment of the largest part (by far) of JK Chemicals' claim against Fradin and Jerome Kaplan was, in our estimation, ill-advised, since counsel has offered so little in support of his concern over the defendants' inability to satisfy a judgment in excess of $240,000. *See infra.* Given the enormous (and adjudicated) bad faith and lack of credibility previously exhibited by both defendants, and with no information or explanation as to missing assets, we wonder whether the trustee's fiduciary duty to creditors has been met in this matter. Notwithstanding the preceding remarks, the Court is not free to award damages which are not established by competent evidence, and we must limit our deliberation to a determination of the pecuniary loss suffered by the estate as a result of the shortage of inventory of precious metals for which Jerome Kaplan and Harry Fradin are accountable.

■ Having carefully considered the testimony and exhibits, we find that the value of the inventory of precious metals missing at the time of the filing of the debtor's petition, and for which the defendants are responsible, is $237,712. We reach that conclusion easily, based on the testimony of Thomas J. Westgate, a certified public accountant retained by the trustee to examine the books and records of the debtor,

---

1. This adversary proceeding has already generated one appeal to the District Court. *See* Findings of Fact and Conclusions of Law, AP No. 820314, dated January 8, 1986. 58 B.R. 225. The appeal was dismissed by order of Chief Judge Boyle on February 20, 1986 for failure to comply with Bankruptcy Rule 8009(a)(1).

2. "A summary judgment ... may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of the damages." Fed.R.Civ.P. 56(c).

3. Apparently the trustee accepted Mrs. Kaplan's representations that she was not privy to any corporate wrongdoing. *See* Answers to Interrogatories, dated March 8, 1985.

and who assisted in identifying misappropriated assets of the debtor. Mr. Westgate explained, in a convincing and credible manner, the accounting method he used to arrive at the figure of $237,712, and defendants' efforts to discredit his testimony, without offering any rebuttal evidence (either documentary or by witness), were ineffectual. We are satisfied that Mr. Westgate's calculations, as set out in Trustee's Exhibit 1, page 4,[4] conform with generally accepted accounting principles, and that they accurately reflect the amount and value of the missing inventory. *See also* Trustee's Exhibits 1, 3–5.

■ Also, we (reluctantly) conclude that the plaintiff has not met his burden of proof as to his request for the imposition of punitive damages and the assessment of attorneys' fees against the defendants. While this Court is empowered, in its discretion, to award punitive damages where the circumstances warrant, *see In re Walker*, 7 B.R. 216 (Bankr.D.R.I.1980); *Scully v. Matarese*, —— R.I. ——, 422 A.2d 740 (1980), because plaintiff elected not to introduce evidence showing defendants' financial ability to respond to such an award, *see Greater Providence Deposit Corp. v. Jenison*, —— R.I. ——, 485 A.2d 1242 (1984), an award of punitive damages would not be appropriate. The request for attorneys' fees is also denied.

Accordingly, judgment should enter against defendants Jerome Kaplan and Harry Fradin, jointly and severally, in the amount of $237,712, plus interest and costs from the date of the complaint.[5] *See In re Roco*, 37 B.R. 770, 774 (Bankr.D.R.I.1984). Additionally, because the claims of Kaplan

**4.** The $240,414 figure in Exhibit 1, page 4, was reduced at trial to $237,712.

**5.** The complaint was filed on July 7, 1982.

**6.** The three conditions which must be satisfied before the Court may exercise its power of equitable subordination are: (1) that the subordinated creditor has engaged in some type of inequitable conduct; (2) that the conduct resulted in injury to other creditors; and (3) that equitable subordination is consistent with the provisions of the Code. *Benjamin v. Diamond*

and Fradin (Proof of Claim numbers 46 and 47, respectively) were not addressed at the hearing, we cannot summarily disallow said claims. However, based upon all that is before us, including their guilty pleas to charges of fraud and conspiracy to commit fraud, we believe that the claims of Kaplan and Fradin should be, and hereby are, subordinated[6] to the claims of all other creditors. *See* 11 U.S.C. § 510(c); *see also Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *In re Roco, supra,* at 773.

Enter Judgment accordingly.

*(In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir.1977). *See also In re Bellucci*, 29 B.R. 814, 10 B.C.D. 721 (1st Cir.B.A.P.1983). Defendants' conduct was clearly inequitable and a "violation of [the] rules of fair play and good conscience" which they owed the corporation, *Pepper v. Litton*, 308 U.S. 295, 310–311, 60 S.Ct. 238, 246–247, 84 L.Ed. 281 (1939), has damaged other creditors to the extent of the missing assets, at a minimum, and the application of the doctrine of equitable subordination is consistent with the provisions of the Code.